Good afternoon, Alan Ariyev on behalf of the Appellant Intelligent Law. Mitchell Hall, Mr. Hall, the Appellant is present. I'd like to reserve five minutes for rebuttal. The issue before the Court is a narrow one. The issue is whether the Appellant, Mr. Hall, stated a valid cause of action for defamation and specifically whether the appellee, Ruggill, is the publisher in connection with the alleged defamatory letter that Dr. Smith, our friend, had signed. We submit that the District Court erroneously dismissed Mr. Hall's complaint on the 12B6 motion, even though the complaint had stated a valid cause of action for defamation. The District Court was required to accept all of the material allegations in the complaint as being true. They're not required to accept conclusions, are they? I don't believe, Your Honor, that the complaint draws conclusions. The complaint specifically at five different places.  Says publishing. That's a conclusion. What do you mean by publishing? Well, I believe the reasonable inferences in this case based on the facts, the relationship between the two ladies, the fact that the original handwritten letter. What do you mean by publishing? What does it mean to publish? Not being a friend, so what does it mean to publish? Editing, revising, typing, disseminating information to a third party. Now what did the defendant do to disseminate to a third party? The defendant testified that she typed the letter. But it's our position that simply giving the letter back to her friend, Dr. Smith, and Dr. Smith depositing the letter in the mail does not absolve Jane Ruggill from publishing because otherwise anyone who types or writes a defamatory letter and gives the letter to a third party to drop in the mailbox, for example, Dr. Smith's cleaning lady. In this case, the person giving the letter over, the defendant didn't give it over to a third party, gave it back to the author of the letter, the person whose name was on the letter. That's not the same as giving it over to a third party, is it? We believe that the evidence in this case shows, and will show by inferences, when you look at all of the facts, the relationships here, that Jane Ruggill had more to do than just typing the letter and giving the letter to Dr. Smith. If Dr. Smith had thought better of sending the letter and put it in her shredder, would you have a case? If no one typed the letter? No. The letter was reviewed, edited, typed, handed to Dr. Smith, and she said, you know, I'm not going to send this letter. I'm going to put it in my shredder. Would Ruggill have published? No. Publication requires dissemination to a third party. In this case, the letter was sent to the CEO of Cigna by Dr. Smith, and Jane Ruggill testified that she knew that the letter was being mailed and that she testified that she had... That's a fairly common assumption if you type up a letter for someone and they sign it and they stick it in an envelope that they're going to mail it, but was Ruggill somehow responsible for Smith mailing the letter? No, but Ruggill testified, for example, that she knew that the letter contained the American Online address for Dr. Smith at the bottom of each page. She also testified that she had known that when she was typing the letter, she would have deleted the AOL address at the bottom of the page. She testified that based on her communications with Dr. Smith... Now, you have to keep the facts here in context. Jane Ruggill is not just a mere typist or stenographer, a paid secretary at a law firm. Where should I make a difference under your theory? Under your theory, a typist at a law firm, a typesetter at a newspaper would be equally liable. No, I don't. Why? Because I think the case law is clear that there is immunity to people in an agency relationship, in a master-servant relationship, who type letters for a living, as opposed to Jane Ruggill, who, one, was not getting paid to type the letter, two, had lived and had known Dr. Smith for 30 years. Why does that make a difference analytically? Either you're published to a third party or you don't. And what's your best case that says these, under similar circumstances, that anyone has ever held that this is a publication to a third party within the meaning of defamation law? Because Jane Ruggill specifically testified that she had serious and grave concerns about... The question asked for a case. Do you have a case? That's anywhere close to this. I don't think there is one that says, under these circumstances, or similar ones, that the actions constitute publication to a third party within the meaning of defamation law. There is not a case on point. There are cases that hold stenographers to court as correct, stenographers and typists not liable. But it's our position that Jane Ruggill is not a mere stenographer, that she is a co-facilitator or co-participant. So the only case law that's out there that deals with someone who prepared a letter but was not the person who physically communicated or disseminated it are cases that hold that those acts can't constitute publication, right? Correct. And there's no case, no case of any kind anywhere, that says what Ruggill did here was constitute a publication. Is that right? Correct. You want us to write that case? No. Those cases deal with people who are in the employment relationship, with people who draft letters, secretaries, receptionists, typists, clerical people, et cetera. But you can't give us a case that draws that distinction, so you want us to write the decision that draws that distinction for the first time? No, Your Honor, I don't. I want the trier fact in this case to look at all the inferences that are raised by the deposition testimony. What I think I'm hearing from you is not a definition of publish that covers what defendant is accused of doing. What I think I'm hearing is a theory of really aiding, abetting a publication by Dr. Smith. We don't know whether Jane Ruggill merely aided and abetted Dr. Smith. Well, you seem to know that she didn't publish because if she just handed it back to Dr. Smith and Dr. Smith had shredded, you acknowledge that wasn't publication. So what Ms. Ruggill did wasn't itself publication. Is that correct? We don't know the truth because when I deposed Ms. Ruggill and tried to find out the extent of her involvement with the letter, she claimed to be a paralegal for Dr. Smith's attorney. No, no, no. Listen. You were asked the question, if she gave the type letter back to Dr. Smith and Dr. Smith destroyed it, would there have been publication? And you answered that no. You don't accuse Ms. Ruggill of doing anything beyond that point in time. So I take it what Ms. Ruggill did all by itself did not achieve publication because it wasn't sent to a third party. That was something done, if at all, subsequently by Dr. Smith. But Ms. Ruggill knew that the letter was going to be mailed by a third party. And what case says that that makes any difference? Well, I can't conceive, for example, that someone, for example, who knowingly and recklessly types a defamatory publication and knows that that publication is going to be sent out, that the fact that the person alone did not send the letter himself or herself absolves that person from defamation. Because otherwise, basically under that logic, you would give immunity to anyone who types a defamatory letter who then says, well, I didn't know it was going to be sent out. I didn't know if I gave it to my cleaning lady, she was actually going to drop it in the post office or not. I can't imagine that this would be an affirmative defense to publication by simply saying, well, yeah, I researched the facts into the letter, and yes, I typed it, but I didn't know whether it was going to be mailed or not. Now, for example, if Jane Ruggel refused to answer questions claiming the attorney client and work product privileges, she claimed to be a paralegal for Dr. Smith's attorney. When I ask specific questions in her deposition about her involvement with the letter, I believe that a trier of fact, or at least for the purposes of a motion for summary judgment, could determine, based on the reasonable inferences,  She said under oath, if my recollection is right, that she didn't discuss the contents of the letter with anyone, right? Other than Dr. Smith and refused to answer questions. About the attorney. About the attorney. No, but aside from Dr. Smith's attorney, we don't know about that. She said, I didn't discuss it with anyone, right? Correct. Okay. Correct. So when you say you don't know, you actually do know, because you asked her the question under oath, and she answered it. And that's my point, Your Honor. I think that if the district court had allowed the case to proceed, I think that Jane Ruggel could later bring a motion for summary judgment that plaintiff did not meet his burden to show publication based on the deposition testimony. But for the purposes of a 12B6 motion, the complaint raises the elements of defamation, and I think that they rely on the exhibit attached to the complaint as evidence that all she did was type the letter. And I think there are other facts concerning the relationship, the invocation, or the privilege in connection with the conversations with Smith's lawyer that any trier of fact, a jury for the purposes of trial, would find that her involvement was much deeper than a mere stenographer. The affidavit that described what Ms. Ruggel did was attached to the complaint? The portion of Ruggel's deposition testimony was attached as an exhibit to the complaint. And who did that? The plaintiff did, Mr. Hall. You? I did, sure. So you put that information, made it part of your complaint, right? Correct. And plaintiff does not believe that the exhibit contradicts the complaint. Ms. Ruggel takes the position in her brief that because the exhibit, the deposition testimony contradicts the essence of the complaint of publication because she testified that she only typed the letter. I don't believe that the deposition exhibit contradicts the material allegations in the complaint. The court elects to look at the attachment to the complaint and say, well, those are the facts. As a legal conclusion, that doesn't constitute publication, or that does not constitute activity for which defendant can be held liable as a matter of law. Why can't the motion to dismiss be granted? Because there are other allegations, and they complain, and they exhibit in the deposition testimony. The other allegations, you're just pointing to the fact that you used the word published six or seven times. But that's a legal conclusion. If the facts as alleged in the complaint, as set forth in this attachment, are the facts that the court is supposed to act on, and the court says, well, those facts don't constitute publication as a matter of law, isn't that grounds to dismiss? But, Your Honor, there's more than just the term publications in the complaint. For example, paragraph 8 of the complaint alleges that, quote, Ruggel was negligent in failing to ascertain the truth of the defamatory statements. Paragraph 10 of the complaint, Ruggel, quote, read, reviewed, typed, and edited the defamatory letter. Paragraph 11, Ruggel was liable for typing, reviewing, editing, and publishing the letter as though she signed it herself. Those sound to me all like legal conclusions. As a matter of law, the assertion that Ruggel was liable is simply a legal conclusion based on certain facts. And if the court says, those facts don't support a cause of action, that sounds to me like a Rule 12-B motion. But at the time of drafting the complaint, all reasonable inferences must be leaned toward the draft of the complaint, the plaintiff in this case. And I don't believe it is proper to dismiss the case, the complaint, when the complaint alleges the various elements of defamation, the reviewing, the editing, the revising, the publishing, when you don't give the plaintiff the opportunity to conduct discovery to find out the extent of the defendant's wrong. Because, again, under that logic, if the court finds, well, you didn't present any facts in the complaint to show us what exactly she did, what case would be able, in a defamation case, would be able to proceed to discovery to find out exactly what her involvement was and to raise those kinds of inferences that could survive a Rule 56 motion. Let me ask you a quick question on the complaint because your time is running out. It's a different question. The question of our jurisdiction has been brought into question in terms of the amount of controversy. Where did you ever assert that the amount of controversy exceeded 75,000? It's not in your complaint. I believe the defendants raised the jurisdiction and they offer a judgment. Federal rule applies only to defendants anyway. So the argument of jurisdiction, I think, fails because plaintiff cannot even raise, cannot even make an offer of judgment under the federal rules. Only defendants can. And second — I'm not talking about the offer of judgment issue. Leave that aside for a minute. Where did you affirmatively plead anywhere that the amount of controversy exceeded 75,000? It's not in the complaint that I could find. And I can't find anything else in the record. So we're left with this other issue. But I just wanted to know, since you're standing here, where is it? The complaint, and I don't have it right in front of me, the complaint I believe alleges that both personal and subject matter jurisdiction meet the requirement of the court. No, what it says is that the amount is outside the mandatory arbitration. That's all I could find. Okay. You've got about a minute left. Did you want to save it for a moment? Yes, sir. Thank you for your argument. Counsel? May it please the Court, as you heard from the appellant's argument, he has failed to state a claim upon which relief can be granted. There are no allegations of fact contained in the complaint that allege any action taken by my client, Ms. Rugal, that would constitute publishing. That's an essential element of the defamation cause of action, and nowhere in the complaint does he make those allegations. Merely stating she published the letter is not the same as putting us on notice as to what facts he, if assumed true, would constitute publishing by my client. As you know, this court held in Holden v. Hagopine that it can consider documents attached to the complaint. The letter clearly shows that it was signed by and sent by Ms. Smith. Clearly, when you take the complaint and the attachments together, it is clear that it was Ms. Smith, if anyone, who published the letter and not Ms. Rugal. So really you're saying he put too much in the complaint. If he just said publish and had no facts, he could survive a 12B6 motion. But now that we have the affidavit, we know what he believes constitutes publication, then he's out of luck. Is that what you're saying? No, no, Your Honor. I think it hurts his case, the attachments of the letter, but just the face of the complaint lacked any allegations of fact that if deemed true would constitute an act of publishing on my client. It's not enough for him just to state Rugal published the letter. He needs to allege some kind of action that would constitute publishing, and he doesn't do so. Attaching the letter and the affidavit just makes my case even more strong because it clearly shows that someone else did the publishing, not my client. Well, he would state a client if he just recited the elements. You could argue that it ought to be more specific, but wouldn't it survive a 12B6 motion? I guess the ‑‑ If you just have an allegation laying out the bare elements of defamation and including publication to another, I think that's probably sufficient to survive 12B6. Wouldn't you agree? I wouldn't. I think as this Court held in Clegg v. Colt Awareness Network, you need not assume the truth of legal conclusions merely because they're cast in the form of allegations. I think that there isn't sufficient pleadings of fact in the complaint to show any kind of action. This is a notice pleading state, right? State and federal. There's some sense to this question, isn't there? If the complainant simply said that your client published, you would be perfectly entitled in that circumstance to inquire through written discovery or otherwise, of the plaintiff to find out exactly what Ms. Ruggel is supposed to have done to accomplish publication. But under notice pleading, why wouldn't that be enough for Rule 12 purposes? I still think that there needs to be some kind of allegation of fact that would constitute the publishing. She published by communicating or aiding and abetting the communication to third parties. If it said that, would that have been enough? That, I believe, would have been enough to at least get passed without if those attachments were not able to be considered by the court. Well, isn't that what he said? No, he didn't say that. He just said published the letter. He never said communicated to a third party on the part of Ms. Ruggel. Fairly construed, the complaint alleges that Ruggel knew that Smith was going to disseminate this letter. Is that right? The deposition testimony. Here we go. I don't know if she said. I think he has. Yeah, I'm looking at paragraph 10 where it says, defendant published the letter to a third party. But he doesn't allege how she published the letter, how the communication was given to a third party. Why wouldn't that be enough on a notice of pleading note? Well, I think you have to take the facts that we have in hand. And with the attachment of the letter and the attachment of the affidavit, it was clear that it was someone else. I understand that. I'm asking, if you want me to say hypothetically, why wouldn't that be enough to survive a 12-16? I think it would. It seems to me. Okay. Could this be a case for aiding and abetting somebody else's publication? I mean, if somebody writes in a magazine, classic defamation defendant, doesn't actually deliver the magazine to anybody, you don't require personal delivery on the part of the defendant, why should personal delivery or participation in the delivery process be required of this defendant? Well, in order for – Well, first of all, I mean, this wasn't an aiding and abetting claim. This was a claim for defamation, damages against my client for a defamation cause of action. If this were a cause of action – Aiding and abetting is a criminal concept, but I've just adopted that language because it's familiar. But can there be participation or the – why doesn't this match the magazine author who gets named as a defendant in a defamation case, even though that person doesn't actually deliver anything, doesn't literally publish, simply writes something and sends it in? Well, I would argue it's more akin to a stenographer, to a legal transcriptionist or legal secretary who's merely typing words at someone else's direction and has nothing to do with the actual sending or disseminating the information to a third party. Suppose your client had walked with Dr. Smith to the mailbox and along the way encouraged her, you're doing the right thing here. But Smith was the one that actually dropped it in the mailbox. Would that be enough? I don't think so. I think the words are – Suppose Dr. Smith got to the mailbox and said, I don't know if I should do this or not. And your client had said, no, you're doing the right thing, mail it. Would that be enough? I think that might have – if this was a cause of action for aiding and abetting, those would be much more favorable facts than the ones that have been gotten in sworn testimony by my client. Took her by the hand and actually helped her put the letter into the mailbox. Helped her put the letter into the mailbox. So you're conceding that a conduit, a typist, a preparer of a letter, could under some circumstance engage in activity which could constitute publication. I understand you're saying in this case that it didn't, but you're conceding that it could. I think if that third, that typist, disseminated that information, they could have publication that could constitute publication. Assisted. I mean, we don't have to use a fancy term like aided and abetted, but assisted in its being disseminated to others in the ways we've talked about. I don't think the assistance – I mean, the assistance is a – I guess that would have to be for the trier of fact. Or mailed it herself. I'll mail this for you. I think you have to step back, though, and the words are not hers. Dr. Smith says, I'm going to mail this. Don't worry, I'll put it in the mail for you. I think that would be more akin to the legal secretary exclusion. I mean, a lot of legal secretaries write things, they type it out. It's signed by the attorney, the author, and then the secretary is actually the one that puts the stamp on it. But I don't think that makes them responsible for disseminating the information. They're just merely following through the directive of the person who is actually making the alleged defamatory statements. Would you mind addressing the amount in controversy question? I understand your position is that because they made a settlement offer under the jurisdictional map that that's fatal to their claim. I'm not sure I totally buy that, but I also don't find anything in the record where they asserted a jurisdictional. Was there a discovery? Nothing? No, Your Honor. There's nothing in the record? Nothing in the record that asserts the amount in controversy meets that jurisdictional requirement. Let me ask another pleading question. Are you conceding that Mr. Hall is a private person for defamation purposes and not a public figure or a limited public figure, vortex public figure? Vortex public figure would be the kind who is deemed a public figure because he or she has been thrust into the controversy. I take it that's not part of this case? No. So the heightened pleading standards that would apply to those kinds of cases, you concede don't apply here? Correct. Okay. We didn't allege that. I would like to address a couple of the appellant's statements regarding the testimony by Ms. Rugel. Because the sworn testimony, he states that she didn't look into the truth of the allegations, and that is not an essential element of the defamation cause of action. And he also asserts that had he been given time to uncover and do some discovery that he would have uncovered or somehow been able to meet the standards of the cause of action of defamation. But he had full opportunity in Hall v. Smith to take Ms. Rugel's testimony. He took her sworn testimony in a deposition, and she testified in trial. He knows all the facts. He knows what her story is. He has the testimony. So it would be an identical discovery in this case. He's had a full and final opportunity to get all of that discovery that he's saying that if he just had more time or just more discovery that he's going to uncover something. He had that opportunity. He still hasn't amended the complaint or alleged anything that would constitute publishing on the part of my client. He also misconstrues her testimony. He says that she had serious and grave concerns, and he construes that to mean that she had serious and grave concerns about the allegations or the statements in the letter. However, she testified she didn't know if they were true or not true. She was merely typing. She was just typing a letter for a friend. She didn't know if they were true. But if they were true, they are serious allegations, and she conceded that. But he misconstrues this into trying to make this claim that she was somehow assisting and somehow knew that these allegations were defamatory. The other thing he brought up was the AOL address. Now, the AOL address was my client testified she did type the letter on Dr. Smith's AOL account, but this doesn't mean that this was published to anyone on AOL online. This isn't like being online where someone could see the letter, and there's no allegation that anyone on the AOL line received that information. What she did testify was all she did was type it on that account. She printed it out, and that was it. That's akin to an email. If you drafted an email, printed it out, and didn't hit send. So this allegation that it was done on an AOL address and online account that could have been disseminated is mere speculation, and there's been no proof and no allegation that anyone on AOL received that information or that information was published to. I think that's all I have. No requirement that you use all your time. Thank you for your argument. Thank you. Rebuttal. I don't know of any federal rule or civil procedure that requires pleading a defamation action that contains, quote, some kind of factual action constituted publishing. This is not a fraud case that requires pleading with specificity under Rule 9b. It's enough to simply say that someone published, as paragraph 10 correctly states, to third parties. Editors of newspapers, for example, are often held individually liable for defamation, even though they do not write the newspaper articles themselves, and even though they don't distribute or pass newspapers to subscribers, but they are held individually liable in defamation action. In Jones v. Calder, the California Court of Appeals at 138 Cal Appeal 3rd 128 said that was a case that was upheld by the U.S. Supreme Court in Calder v. Jones 465 U.S. 783. The court stated, quote, the general rule for defamation is that everyone who takes a responsible part in the publication is liable for the defamation. The court went on to say, quote, every person who either directly or indirectly publishes or assists the publication of an actionable defamatory statement is liable for the resultant injury. That's Jones v. Calder 138 Cal Appeal 3rd 134. It is clear that a person who revises, edits a letter, or if in this case the complaint alleges the word publishing and revising and editing, that if there are inferences that the person did more, assisted, facilitated in the distribution and creation of the defamation, that that person may be held individually liable for defamation, not like the mere paid stenographer or typist. Okay. Thank both counsel for their arguments against this target. It will be submitted for decision.
judges: Hawkins, Thomas, Clifton